HYMAN SUTTON v. GEORGE J. LAMB.

*Bills and notes—Payment—Statute of limitations—Contract of sale—Passing of title.*

Where the payor in certain notes agreed with the payee to send
him at a designated place certain goods, on which the payee
was to pay the freight, and indorse a given sum on the
notes, the sale is complete on receipt of the goods, at which
date the payor is entitled to have the indorsement made.

Case made from Eaton. (Hooker, J.) Argued October 4, 1888. Decided November 1, 1888.

*Assumpsit..* Plaintiff brings error. Reversed, and judgment entered for plaintiff for an increased amount according to the opinion. The facts are stated in the opinion.

*George W. Mead,* for appellant, contended:

1. The transaction is to be regarded as one for the benefit of the
   debtor, and the rules of construction and presumptions are in
   many respects exactly contrary to those governing ordinary
   sales, citing Chipman, Cont. 26, 35; 1 Poth. Obl. Art. 3, 497;
   2 Kent, Com. 506; Broom's Legal Maxims, 630.
2. In the case of a contract of sale, the delivery is to be at the
   place where the vendor has the article, but, in case of a con-
   tract to pay a debt in specific articles, the weight of authority
   would seem to be in favor of the rule that the property was

to be delivered at the creditor's place of residence; citing 2 Kent, Com. 506, and cases cited; Chipman, Cont. 29, 30; 2 Pars. Cont. 646; *Railroad Co. v. Nutting*, 15 Gray, 25.

3. In case of a note payable in portable chattels, without specifying the place of payment, the debtor must pay and deliver at the creditor's residence; citing *Goodwin v. Holbrook*, 4 Wend. 377; *La Farge v. Rickert*, 5 Id. 187.

*Ralph E. Stevens*, for defendant, con' ...ded:

1. To properly construe the contract, it must be read in the light of all of the circumstances having any bearing upon the subject when it was made; citing *Spaulding v. Coon*, 50 Mich. 622; *Ferris v. Wilcox*, 51 Id. 105.

2. The execution of the contract operated as a payment of $50 upon the notes upon the day it was made, at which time the plaintiff was bound to make the indorsement; citing *Burchard v. Frazer*, 23 Mich. 224.

3. An agreement to take certain articles in existence toward the payment of a note operates as a payment, for the purposes of the statute of limitations, from the time of the agreement; citing 7 Wait's Act. & Def. 303; *Lincoln v. Johnson*, 43 Vt. 74; 2 Pars. Cont. 684.

LONG, J. This cause was tried at the October term, 1887, of the circuit court for the county of Eaton, before the court without a jury, and the court found the following facts and conclusions of law:

"1. On the 9th day of April, A. D. 1879, the defendant made and delivered to the plaintiff his three promissory notes,—one for $100, and one for $200, both payable one year from date; and one of $200, payable two years from date. All drew interest at the rate of ten per cent.

"2. The consideration for said notes was the right of one-half of the State of Michigan in a patent fence.

"3. On the 30th day of August, A. D. 1880, the plaintiff, then living at the town of Scruple, Oswego Co., N. Y., made a further contract with the defendant, then living at Sunfield, Eaton Co., Mich., by the terms of which it was agreed that the defendant should send to the plaintiff two good vibrator harrows, made at Kalamazoo, Mich., providing he could get the same, and, if not, one twenty-tooth Lansing harrow, and one twenty-tooth

Kalamazoo spring-tooth harrow, to be sent to Central Square, Oswego Co., N. Y.; plaintiff to pay the freight on the same, and indorse fifty dollars on the notes in controversy. It was further agreed that the defendant was to have further rights in the sale of territory for said fence, on conditions stated in the contract, which was in writing.

"4. In pursuance of this contract, the defendant shipped at Vermontville, Eaton Co., Mich., two harrows, viz., one vibrator harrow and one Lansing harrow, though he admitted at the trial that he had, and could have sent, two vibrators, had he been disposed to do so. These harrows were shipped to the plaintiff's address,— Central Square, Oswego Co., N. Y.; the first being sent September 9, and the other September 20, 1880.

"5. These harrows came to the possession of the plaintiff on the 5th of October, 1880; and on the same day he indorsed $20 upon each of the $200 notes, and $10 on the $100 note.

"6. No subsequent or other payment was ever made on said notes or either of them.

"7. The amount due upon said notes is as follows (indorsements being deducted), viz.:    On the $100 note, $175.83; on the $200 notes, the sum of $351.66 each,— total, $879.15.

"8. This action was commenced September 22, 1886.

"9. By the ordinary mode of freight traffic the said harrows would not reach Central Square, Oswego Co., N. Y., in less than six days from the date of shipment."

Upon the foregoing facts being found, the court delivered its opinion of the law as follows:

"1. The consideration for the notes was valuable, and the notes were valid.

"2. The contract of August 30 was based on a valuable consideration, and was a valid contract.

"3. The shipment of the harrows not being in accordance with the terms of the contract, the plaintiff might accept the same as payment or not, as he chose.

"4. Part payment takes the claim out of the operation of the statute of limitations only where made under circumstances that warrant the inference of a new promise to pay the debt.

"5. In this case the shipment of the harrows under

the contract of the parties was the significant act from which the new promise is to be inferred; and neither the promise nor the time can be deferred by the act of the plaintiff. The payment, if made under the terms of the contract, was complete at the time the goods were shipped; and though, in view of the fact that the goods sent were not in compliance with the contract, the plaintiff was under no obligation to receive the same, if he chose to do so, then it must be treated as a compliance with this contract, and the delivery complete when the goods were shipped. That was the kind of payment the defendant attempted to make, and the time he attempted to make it; and the new promise must be inferred from his acts, if at all, and not by a subsequent acceptance by the plaintiff.

"6. The two notes payable in one year are therefore barred by the statute. Upon the other the plaintiff should recover a judgment of $351.66, and costs to be taxed."

The contract referred to in the third finding of fact reads as follows:

"This agreement, made this 30th day of August, in the year 1880, between George J. Lamb, of Sunfield, Eaton Co., Mich., and H. G. Sutton, of Scruple, Oswego Co., N. Y., witnesseth that the said George J. Lamb agrees to send to the said H. G. Sutton two good vibrator harrows, made at Kalamazoo, Mich., provided that the said Lamb can get them; if not, one twenty-tooth Lansing harrow, and one twenty-tooth Kalamazoo spring-tooth harrow, in lieu thereof; to be sent to Central Square, Oswego Co., N. Y. And the said Sutton is to pay the freight on the same, and indorse fifty dollars on notes now held by said Sutton against the said Lamb.

"And on these conditions the said Sutton agrees to grant unto the said Lamb the right to sell territory for Todd's portable fence, on the following conditions: The said Lamb is not to sell any state for less than two hundred and fifty dollars, and as much more as he can get; to be in good money, or the equivalent. And the said Lamb is to have all over one hundred and fifty dollars for his share, to be applied on the notes now held by the said Sutton against the said Lamb. And the said Sutton is to furnish a good and sufficient deed for the same.

And the said Lamb can sell any state west and south, of New York not previously sold.

" Signed and sealed on the day and year above written.

" GEORGE J. LAMB.    [Seal.]

" H. G. SUTTON.          [Seal.]

" And it is further agreed between Sutton and Lamb that, if the said Lamb can sell any county in any state aforesaid, he is to have one-half of the proceeds for making the sale, to apply on above-named notes until paid; and townships in like proportions.

" GEO. J. LAMB.

" H. G. SUTTON."

The plaintiff, on December 7, 1887, filed written exceptions to said findings. Judgment was entered in the cause, in accordance with the conclusions of law, in favor of plaintiff, for the sum of $351.66. Plaintiff, claiming that he was entitled to the full amount of all the notes and interest, brings the case to this Court by writ of error.

The *only* question arising in the case is upon the construction of this contract for the sale of the harrows, and that as to the time when the sale was completed, so that the defendant was entitled to credit for the amount of the purchase price of $50, to be indorsed upon the notes. The court seemed to be of the opinion that there was a delivery as soon as the harrows were put on the cars at Vermontville, Eaton Co., Mich., and that the amount should have been credited upon the notes as of those dates, September 9 and September 20, 1880, and, if the amount had been so credited as payment, more than six years would have elapsed from those dates to the time the suit was commenced; and that the action as to the two notes due one year from date would have been barred by the statute; and following this view held the two notes barred.

In this the court was in error. The contract itself settles this question. It provides that the harrows were—

"To be sent to Central Square, Oswego Co., N. Y.; and the said Sutton is to pay the freight on the same, and indorse fifty dollars on the notes."

The only reasonable construction that can be given to this language is that, upon the receipt of the harrows, Sutton was to pay freight, and then indorse the $50. This indorsement was not to be made until the harrows were received at Central Square. The court finds the fact that the harrows came to the possession of the plaintiff on October 5, 1880, and that the indorsements were made on the three notes as of that date. It cannot be said that defendant was entitled to this indorsement at an earlier date.

Some stress is laid by counsel for defendant upon the fact that the harrows shipped did not correspond to the harrows described in the contract; and the plaintiff, for that reason, having the option to receive or reject them, and having determined to receive them and make the indorsement, it was his duty to make it as of the date of the contract, instead of the day they came to his possession. There is no force in this suggestion. It could not change the contract as to the *time* when the indorsement was to be made. They were sent by the defendant on the basis of the contract, and accepted by the plaintiff in the same way.

Counsel for defendant now makes claim that the indorsement should have been made on the date the contract was entered into, to wit, August 30, 1880; that the contract operated as a payment on the notes on the 30th of August, 1880, when it was executed, and the shipment of the harrows was simply a payment on that contract, and not on the notes.

This might have been true if the contract had so provided. The agreement was that defendant was to send plaintiff two good vibrator harrows, made at Kalamazoo,

Mich., provided defendant could get them. If not, he was to send one twenty-tooth Lansing harrow, and one twenty-tooth Kalamazoo spring-tooth harrow, in lieu thereof. These articles were to be sent to Central Square, N. Y.; plaintiff to pay freight, and make the indorsements on the notes. Payment of freight could not be made until the articles arrived at their place of destination; and the plain intent of the parties, by the terms of the contract, was that *then* the indorsement was to be made. This contract was not intended to operate as a payment on the notes; but the articles themselves, when received, were to be taken at the price of $50, and that amount then indorsed. In any view of the case, the court was plainly in error in holding the notes barred.

The court found the amount due on the three notes for principal and interest at the date of the judgment, November 21, 1887, after deducting indorsements, to be $879.15. Judgment should have been rendered in favor of plaintiff for that amount.

The fifth and sixth conclusions of law of the court below, barring the two notes, must be reversed, and judgment in this Court rendered for $527.49, with interest at 10 per cent. from November 21, 1887, and costs of this Court.

The other Justices concurred.